IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDON EDWARD SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DKC-24-2575 |
| D.O.C. HATCHER, *et al.*, | * | |
| Defendants. | *** | |

**MEMORANDUM OPINION**

Plaintiff Brandon Edward Smith ("Mr. Smith") filed the above-captioned civil rights action, pursuant to 42 U.S.C. § 1983, pertaining to an injury he suffered while housed at the Maryland Correctional Institution – Jessup ("MCI-J"). ECF No. 1. The amended complaint and supplemental exhibits are the operative pleadings. ECF Nos. 5-1, 7. Mr. Smith names as Defendants Facility Administrator Virgiel Hatcher, Warden Tikaya Parker, Captain Yvonne Green, Major Lance Bernhard, Captain Ronel LeGrand, Captain Edward Morris, Lieutenant Robert Anderson, and Correctional Officer Ahmed Foday.[1]

Defendants filed a motion to dismiss or for summary judgment. ECF Nos. 27. The court informed Mr. Smith, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the dispositive motion could result in the dismissal of the amended complaint or the entry of judgment against him. ECF No. 30. Mr. Smith did not file a response. No hearing is necessary to address the matters pending. *See* Local Rule 105.6 (D. Md. 2025). For the following reasons, the motion will be granted in part. Summary judgment will be

---

[1] Defendants have fully and accurately identified the defendants named by Mr. Smith. ECF Nos. 21 at 1, 27 at 1. The Clerk will be directed to revise the caption accordingly.

granted on Eighth Amendment claims and the court will decline to exercise supplemental jurisdiction over state claims.

## BACKGROUND

### A.    Amended Complaint Allegations[2]

On June 9, 2022 at 5:25 a.m., Mr. Smith was standing by the pool table in the day room waiting for breakfast to be called. ECF No. 5-1 at 6. The rails on the pool table fell apart, and then collapsed on Mr. Smith's left leg and left foot causing sharp pains throughout his "whole body." *Id.* He then "hopped over" to the control center and knocked on the window to try to get assistance from Officer Akamoye who was asleep in the control center. *Id.* Mr. Smith was not able to get assistance from Officer Akamoye, and then hopped up to the kitchen on one leg. *Id.* Sergeant Jenkins then escorted Mr. Smith to the medical department. *Id.* at 6-7. Mr. Smith suffered a broken big toe on his left foot for which he received medical treatment. *Id.* at 7.

Mr. Smith asserts that the pool table has always been hazardous and unsafe and it was held together with ripped up bed sheets. *Id.* He states that each Defendant, namely Facility Administrator Hatcher, Warden Parker, Captain Green, Major Bernhard, Captain LeGrand, Captain Morris, Lieutenant Anderson, and Officer Foday had first-hand knowledge of the poor condition of the pool table and failed to take action to have it removed. *Id.* Mr. Smith seeks to recover monetary damages, lost good conduct credit, and injunctive relief to prevent retaliation for pursuing this claim. *Id.*

Mr. Smith filed a claim under the Maryland Tort Claims Act that was denied by the State Treasurer on January 23, 2023. ECF No. 7-3 at 1-2. Mr. Smith also pursued the inmate grievance process. On June 9, 2022, he filed a Request for Administrative Remedy ("ARP"). *Id.* at 3-4. In

---

[2] Unless otherwise noted, the facts outlined here are those alleged in the amended complaint and construed in the light most favorable to Mr. Smith.

his ARP, Mr. Smith states that "the administration has been notified numerous times about the pool table conditions, and still no one came out to fix this dangerous issue or remove it." *Id.* at 4. On July 5, 2022, the ARP was found to be meritorious in part, noting that the pool table had been removed on June 9, 2022, and all other pool tables in the facility were inspected as a precaution. *Id.* at 6. The ARP response stated there was "no evidence to support" Mr. Smith's allegation that administration was notified about the condition of the pool tables prior to the incident. *Id.*

On July 11, 2022, Mr. Smith appealed the ARP decision to the Commissioner of Correction and asserted that he and other inmates had made "complaints" to "numerous administration" about the poor condition of the pool table prior to the incident. *Id.* at 7-9. Complaints were made to each Defendant as they made the daily shift round. *Id.* at 9-10. During shift round every officer has to sign the logbook and document everything that is hazardous or deemed unsafe. *Id.* at 10. On August 11, 2022, the ARP appeal was dismissed and it was noted that the initial finding was that Mr. Smith's complaint was meritorious in part, as the damaged pool table had been removed from the housing unit, and no monetary compensation would be granted. *Id.* at 12.

On August 28, 2022, Mr. Smith filed a grievance with the Inmate Grievance Office ("IGO") to appeal the ARP response and to seek monetary damages. *Id.* at 13-22. With his grievance, Mr. Smith included information that on June 14, 2022, he had an x-ray of his left foot showing a fracture of his toe. *Id.* at 16. On July 25, 2022, Mr. Smith was seen by a podiatrist who advised him he would need to return in one month for surgery to remove a broken bone fragment. *Id.* at 17. Mr. Smith states that the logbook should document entries from Correctional Officers regarding the unsafe condition of the pool table and the daily rounds made by supervisors who should have signed the logbook and entered information on hazardous or unsafe conditions. *Id.* at 19-22. On November 1, 2022, the IGO denied the grievance as without merit on the grounds that Mr. Smith was aware that the pool table was in danger of collapsing and he bears responsibility

for assuming the risk of injury by knowingly using a pool table that was in danger of collapse. *Id.* at 23.

Medical records document Mr. Smith's medical treatment as follows: June 9, 2022 - medical appointment for treatment of an injury; June 13, 2022 - follow up visit for leg pain; June 14, 2022 - x-ray report documenting the "avulsion of the left big toe distal phalanx;" and June 17, 2022 - follow up medical visit and the medical provider's request for a podiatry consultation. *Id.* at 24-32.

**B.    Defendants' Response**

Defendants submit verified exhibits pertaining to Mr. Smith's use of the grievance process. ECF No. 27-2. In addition to the grievance documents similarly provided by Mr. Smith, Defendants include the ARP case summary report. *Id.* at 6-7. The report states that the pool table that injured Mr. Smith was removed shortly after the incident and there was no evidence that he reported the condition of the pool table prior to the incident taking place. *Id.* at 7.

Defendants submit a copy of surveillance camera footage showing the day room during the time the incident occurred.[3] ECF No. 28. The video shows Mr. Smith standing next to the top of the pool table on the left side. The table has multiple fabric ties around the four side pieces. The sides at the left side top and front of the table then fall off the table, while the table remains standing. The side pieces land on Mr. Smith's left foot which is then wedged under the pieces. Mr. Smith pulls his left foot out from under the table pieces, shakes his foot several times, and then walks to the control room where he proceeds to knock on the window. The video footage then terminates.

---

[3]     Defendants filed a motion to seal the video tape as "security sensitive." ECF No. 29. Plaintiff was able to view the video tape, ECF No. 31, and the motion to seal adequately sets forth the nature of the security concerns if there is further dissemination of video tapes of this nature. The motion to seal will be granted.

Defendants also submit search results from the Maryland Judiciary Case Search showing Mr. Smith's state court civil case filing history from January 1, 2022, to July 21, 2025.  ECF Nos. 27-5.  The search results list seven cases in total that include one change of name action, two divorce actions, one breach of contract action, two custody actions, and one tort-motor action.

STANDARD OF REVIEW

Defendants' motion is a motion to dismiss, or in the alternative, a motion for summary judgment.  Because the material outside the pleadings will be considered, the standard for resolving a motion for summary judgment will be applied.  Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted)

5

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023); *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

ANALYSIS

Defendants argue that: (1) Defendants are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity; (2) Mr. Smith has failed to state a claim under the Eighth Amendment; (3) Mr. Smith's tort claims should be dismissed for failure to comply with the exhaustion requirements under the Maryland Prisoner Litigation Act; (4) Mr. Smith failed to state a negligence claim under state law; (5) Mr. Smith is not entitled to mandamus or injunctive relief; and (6) Defendants are entitled to qualified immunity. ECF No. 27-1.

### A.    Eighth Amendment

The court previously held that Mr. Smith plausibly had alleged an Eighth Amendment violation in his amended complaint. ECF No. 10 at 3. Defendants now argue that he has failed to support this claim with evidence. ECF No. 27-1 at 10-13.

The "Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Those duties include maintaining "reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Farmer*, 511 U.S. at 832). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127 (4th Cir. 2016).

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence' " so that " 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' " *Raynor*, 817 F.3d at 128 citing *Farmer,* 511 U.S. at 842. " 'Deliberate indifference is a very high standard,' and 'a showing of mere negligence will not meet it.' " *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)) (additional citation omitted). "*Farmer* defines deliberate indifference as the intentional taking of a risk that the defendant knows might cause harm while lacking any intent to cause such

7

harm." *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017).  "Actual knowledge or awareness on the part of the alleged inflictor ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.' " *Brice v. Va. Beach Corr. Ctr.,* 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

There is no factual dispute that the table collapsed on Mr. Smith, his toe was broken, and he required medical treatment.  Defendants do not contest that Mr. Smith meets the objective component of suffering a serious physical injury, but assert that he cannot meet the required subjective component of the Eighth Amendment claim.  ECF No. 27-1 at 9-13.  Defendants contend that the record does not support Mr. Smith's claim that they were aware of the pool table's poor condition prior to the incident.  *Id.* at 12-13.

In his amended complaint, Mr. Smith alleges generally that the Defendants had first-hand knowledge of the condition of the table and failed to take action to have it removed.  ECF No. 5-1 at 7.  In his ARP appeal he made similar general allegations that he and other inmates had made "complaints" to "numerous administration" about the poor condition of the pool table prior to the incident and complaints were made to Defendants as they made the daily shift round.  ECF No. 7-3 at 7-10.  The record shows that the table was held together with ripped up bed sheets, but there is nothing more than a broad allegation by Mr. Smith that the named Defendants were collectively aware of the condition of the table and that the table posed a hazard.

With their motion, Defendants submit that the ARP case summary report states that the pool table that injured Mr. Smith was removed shortly after the incident and there was no evidence that he reported the condition of the pool table prior to the incident taking place.  ECF No. 27-2 at 7.  Mr. Smith did not respond to Defendants' motion and no further information was provided by Mr. Smith, such as when and how each individual officer was made aware of the condition of the pool table and their knowledge that the pool table posed a risk to safety.

8

Federal Rule of Civil Procedure 56(c) places the burden on the party responding to a motion for summary judgment to show that a fact is genuinely disputed by "... citing to particular parts of materials in the record ...; or... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ, P. 56(c).  Mr. Smith did not respond to the motion, and the record is undisputed that none of the named defendants had notice of the dangerous condition.

**B.     Tort Claim**

Mr. Smith alleges that the Defendants were negligent in failing to remove the pool table from the housing unit prior to his injury.  ECF No. 5-1 at 7.  Negligence is a claim under Maryland state law, not federal law. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).  Under 28 U.S.C. § 1367(a), district courts are granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Pursuant to § 1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a claim... if... the district court has dismissed all claims over which it has original jurisdiction." *See, Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024)(upholding trial court's discretion to dismiss state law claims after granting summary judgment on federal claims.). For the following reasons, the court will decline to exercise supplemental jurisdiction over this claim and it will be dismissed without prejudice.

Defendants assert that Mr. Smith failed to exhaust administrative remedies under the Maryland Prisoner Litigation Act ("MPLA") for his state law claim because he failed to pursue judicial review of the IGO dismissal of his grievance. ECF No. 27-1 at 14-15.  The MPLA provides, in pertinent part, that "[a] prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance." Md. Code

9

Ann., Courts and Judicial Proceedings ("C.J."), § 5-1003(a)(1). Further, the prisoner not only has to complete administrative proceedings, but also available judicial review. C.J. § 5-1003(a)(2). *See Harris v. McKenzie,* 241 Md. App. 672, 680-682, 211 A.3d 685, 689-691 (2019). The order of dismissal by the Inmate Grievance Office constitutes the final decision of the Secretary for purposes of judicial review. Md. Code Ann., Correctional Services ("C.S."), § 10.207(b)(2)(ii). The prisoner is entitled to judicial review of the final decision of the Secretary. C.J. § 10-210(b)(1).

In addition, the MPLA requires that when filing a civil action on the underlying claim, the prisoner must attach to the initial complaint proof that administrative remedies have been exhausted. C.J. § 5-1003(b)(1). The attachments must include proof: that the prisoner has filed a complaint or grievance with the appropriate agency; the administrative disposition of the complaint or grievance; and that the prisoner has appealed the administrative disposition to the appropriate authority including proof of judicial review, if available. C.J. § 5-1003(b)(2).

The IGO determined that Mr. Smith's grievance was without merit and the grievance was dismissed. ECF No. 27-3 at 3. This was the final decision for purposes of judicial review. When Mr. Smith filed his complaint, and also his amended complaint, with the court, he did not submit the required proof that he fully exhausted available remedies through judicial review of the IGO decision. Moreover, the record before the court shows that Mr. Smith did not pursue judicial review. ECF No. 27-5.

The MPLA provides that if the litigant fails to provide proof of administrative exhaustion, the court shall dismiss the case without prejudice and grant the prisoner reasonable leave to amend the complaint and to provide the proof necessary to demonstrate that the prisoner has fully exhausted the administrative remedies. C.J. § 5-1003(b)(2). *See Jordan v. Davis*, No. CV ELH-22-1541, 2023 WL 2478862, *at 22 (D. Md. Mar. 13, 2023) (holding that dismissal of state claims without prejudice is appropriate if proof of exhaustion is not attached) citing *Harris*, 241 Md. App.

10

at 681, 211 A.3d at 690; *Jones v. Maryland*, DKC-19-1335, 2020 WL 433860, at *5 (D. Md. Jan. 28, 2020) ("[Plaintiff] failed to attach proof that administrative remedies have been exhausted and dismissal of the negligence claim is appropriate."); *Germain v. Bishop*, TDC-17-1289, 2018 WL 4518019, at *4 (D. Md. Sept. 19, 2018) (stating that failure to provide proof that administrative remedies have been exhausted "is grounds for dismissal.").

Thus, it appears at present that Plaintiff's state law negligence claim could not proceed here. Because summary judgment is being granted on the only federal claim, there is no reason to exercise supplemental jurisdiction over a state law claim that would have to be dismissed without prejudice in any event. The state law claims will be dismissed without prejudice.[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion, construed as a motion for summary judgment, will be granted with prejudice as to Mr. Smith's Eighth Amendment claims and the court will decline to exercise supplemental jurisdiction over Mr. Smith's state law claims. A separate Order follows.

December 17, 2025

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[4] The court declines to address Defendants' remaining arguments, insofar as all claims will be dismissed.